These are appeals from a jury verdict in the amount of $56,092.00, for the plaintiff, Micha M. Todd against the defendants, M.H. Trimble and Trimble Coal Co., and Willard Drummond. On July 29, 1982, Todd filed suit against Trimble, Trimble Coal Co., and Drummond, alleging breach of agreement and goods sold and delivered, specifically 1,516 tons of coal. The judgment entered on the jury verdict is affirmed.
The facts surrounding this case are as follows:
In 1982, plaintiff Todd started mining in Franklin County, Alabama. He hired Ronnie Abernathy to help him operate his coal mining business. In May 1982, Abernathy made an agreement with Drummond for Drummond and Trimble to buy 1,516 tons of coal. In accordance with that agreement, Todd shipped the coal to Port Osborn. On May 26, 1982, Todd and Abernathy went to see Drummond in order to collect for the coal they had delivered. They were unable to collect. Two weeks later, Todd met with Trimble and an Attorney Guthrie. Todd asked Trimble if he would try to help Todd get his coal back. Through Guthrie they recovered 830 tons of the original coal and 635 tons of a better grade and a greater value. Todd then signed a release for the coal. Todd later sold the 635 tons of better grade coal to another customer. Both Trimble and Drummond denied the existence of a partnership. Drummond said he used Trimble's name in order to place his coal on the order to sell his coal. He further testified that his only agreement through Abernathy was that Todd could ship Todd's coal to Port Osborn and that he would help collect Todd's money for Todd. Todd's witness, Alverson, testified that from May 21, 1982, to May 26, 1982, he sold coal to Trimble. He further testified that in a phone conversation Trimble told him that Trimble and Drummond were partners and that they were mixing coal together and selling it to H S Coal Company.
 I.
Drummond and Trimble first argue that the trial court erred when it denied a directed verdict in their favor on the grounds of violation of the Uniform Commercial Code's statute of frauds. It is admitted that no written agreement existed for the sale of the coal. Drummond and Trimble argue that the sale price was over $500.00 and, therefore, that the contract was unenforceable unless it was reduced to writing. Section7-2-201(1), Code of Alabama (1975), states the following:
Formal requirements; statute of frauds.
 Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon, but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
However, § 7-2-201(3) states:
 A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable:
. . . .
 (c) With respect to goods for which payment has been made and accepted or which have been received and accepted. [Emphasis added.]
The statute provides an exception to the rule requiring a writing evidencing the contract. The general rule is that for a contract for the sale of goods in an amount over $500.00 to be enforceable, the contract must be written; however, when those goods have been received and accepted, no written contract is required. Section 7-2-201(3)(c), Code of Alabama
(1975); Dykes Restaurant Supply, Inc. v. Grimes, 481 So.2d 1149
(Ala.Civ.App. 1985); Engel *Page 812 Mortgage Co. v. Triple K Lumber Co., 56 Ala. App. 337,321 So.2d 679 (Ala.Civ.App. 1975). In this case, it is not disputed that the sale price was over $500.00. Todd delivered the coal to Port Osborn under the designation of Drummond/Trimble, and it was accepted there. Therefore, because Todd met the requirements of the statutory exception, his claim does not fail because of a violation of the statute of frauds.
 II.
Defendants Drummond and Trimble next argue that the trial court erred when denied them a directed verdict on the grounds of release and waiver. One release that the defendants assert relieves them of liability is as follows:
Release
To: Whom it may concern
 This is to certify that H S Coal, Inc. hereby releases 1516.01 net tons of coal, stored at Port Osborn, Alabama, to Eagle Contracting Co.
That release was signed by the president of H S Coal Company and Micha Todd for Eagle Contracting Company.
The other release they rely on reads as follows:
Release
 Guthrie and Morrow Company, Inc. hereby releases all right, title and interest if there was any onto [sic] 1516.01 tons of coal delivered to Port Osborn, Jefferson County Al., May 24th and 25th, 1982 by Eagle Contracting Company.
 Eagle Contracting Company releases Guthrie and Morrow from any financial or legal obligations in relation to this transaction.
That release was signed by John Guthrie, Jr., for Guthrie and Morrow Company, Inc., and Micha Todd for Eagle Contracting Company.
Section 12-21-109, Code of Alabama (1975), governs the effect to be given to the above releases. That code section provides as follows:
 Effect of written receipts, releases, discharges, and judgments entered pursuant to pro tanto settlements generally.
 All receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, and all judgments entered pursuant to pro tanto settlements, must have effect according to their terms and the intentions of the parties thereto.
Where no ambiguity exists, the Court's only function is to interpret the lawful meaning and intentions of the parties as found within the agreement and to give effect to them.Johnston v. Bridges, 288 Ala. 156, 258 So.2d 866, cert. denied,409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972). Parol evidence is not permitted to explain unequivocal terms. Jehle-SlausonConstr. Co. v. Hood-Rich, Architects Consulting Eng'rs,435 So.2d 716 (Ala. 1983).
Both defendants argue that the intention of the releases was to vest in Todd marketable title in order that Todd could sell the coal to other customers. They further argue that Todd sold the 685 tons of coal to another customer and retook possession of the remaining 830 tons, and therefore, that he has been indemnified and his claim should be barred. However, neither Drummond nor Trimble was a party to either of the releases, nor did either document mention either of the defendants. As there was no evidence that any party acted as their agent, they cannot claim they were parties to the agreement. The only parties released from liability would be the parties referred to within the release and agreement. Therefore, the trial court did not err when it overruled defendants' motion for directed verdict.
 III.
Drummond and Trimble also argue that the trial court erred when it denied a new trial or a judgment notwithstanding the verdict. Drummond and Trimble argue that the most Todd could recover would be the amount allowed under § 7-2-706(1), Code ofAlabama (1975). That code section provides that the plaintiff can recover "the difference between the resale price and the contract price together with any incidental damages . . ., but less the expenses *Page 813 
saved in consequence of the buyer's breach." However, the seller's remedy found in § 7-2-706, Code of Alabama (1975), is subject to the conditions set forth in § 7-2-703, Code ofAlabama (1975). That section provides for the remedy listed in § 7-2-706 when the "buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or beforedelivery. . . ." (Emphasis added.) In the instant case, delivery had occurred. Therefore, § 7-2-706 and § 7-2-703 are inapplicable.
 IV.
Drummond and Trimble further argue that the amount received by Todd for the sale of the 635 tons of coal should be applied to reduce the amount awarded. It should again be noted that the 635 tons of coal was not part of the original coal delivered by Todd. It was coal of a higher grade returned to him by virtue of the release. Drummond and Trimble cite Anderson v. Kemp,279 Ala. 321, 184 So.2d 832 (1966), for the proposition that any amount received by a party as compensation for injuries under a conditional release, settlement, or any other kind of arrangement reduces the amount of damages recoverable. We have no quarrel with the wording in Anderson. However, that case involved a settlement with one joint tort-feasor being applied to the other tort-feasor in an action for personal injuries suffered as a result of an automobile accident. The holding of that case is completely inapplicable to the present case. As discussed earlier, the defendants were not parties to the releases. They cannot now claim that the benefit derived from the release was given at their direction where no evidence of agency existed. Damages for breach of contract are to be awarded to put the injured party in the same position he would have occupied had the breach not occurred. Cobbs v. Fred BurgosConst. Co., 477 So.2d 335 (Ala. 1985). The amount of damages awarded is left to the discretion of the jury under proper instructions, and its decision will generally not be overturned unless the amount is so excessive as to show passion, bias, prejudice, or other improper motive, or is against the great weight and preponderance of the evidence. International Union,United Auto. Aircraft and Agr. Implement Workers of America(UAW-CIO) v. Palmer, 267 Ala. 683, 104 So.2d 691 (1958). There is no evidence that the jury's verdict was excessive, was influenced by improper motives, or was against the great weight and preponderance of the evidence. Therefore, the judgment of the trial court based on that verdict is due to be affirmed.
AFFIRMED.
JONES, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.